**SO ORDERED.**

**SIGNED this 22 day of May, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| JACQUELYN DENNISE FORREST, | 06-01967-8-RDD |
| DEBTOR | |

**ORDER DENYING OBJECTIONS TO CLAIMS 4, 10,
AND 15 OF eCAST SETTLEMENT CORPORATION**

Pending before the Court are the Objection to Claim No. 4 of eCAST and the Objection to Claims No. 10 and 15 of eCAST (collectively referred to herein with the Objection to Claim No. 4 of eCAST as the "Objection") filed by Jacquelyn Dennise Forrest (the "Debtor") and the Response of eCAST Settlement Corporation to Debtor's Objection to Claim Numbers 4, 10, and 15 and Memorandum of Law in Support of Response of ECAST Settlement Corporation to Debtor's Objection to Claim Numbers 4, 10, and 15 (the "Response") filed by eCAST Settlement Corporation ("eCAST"). The Court conducted a hearing on the Objection and the Response in Fayetteville, North Carolina on March 25, 2009.

On July 5, 2006, the Debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). On Schedule F, Ms. Forrest listed, in addition to other unsecured claims, an unsecured claim for Dillards in the amount of $2,033.77 for credit card debt; an unsecured claim for The Belk Center in the amount of $547.34 for credit card debt; as well as, an unsecured claim for Bank of America in the amount of $6,692.49 for credit card debt. None of these debts were listed as disputed on the Debtor's Schedules.

On July 10, 2006, Bank of America, N.A. filed a proof of claim in the amount of $6,948.78 based on credit card charges purportedly made by the Debtor accompanied by an account summary that listed the Debtor's name, the last four digits of the account number, the statement date, and the amount due as of the filing date (the "Bank of America Proof of Claim"). The Bank of America Proof of Claim is listed on the claims register as claim no. 4. On February 8, 2007, eCAST filed its Transfer of Claim evidencing the sale of the claim from Bank of America to eCAST.

On August 24, 2006, eCAST, as assignee of GE Money Bank/Dillards, filed a proof of claim, listed on the claims register as claim no. 10, in the amount of $2,043.94 and attached a single page account summary (the "Dillard Proof of Claim"). The single page summary provided the balance due as of the filing date in connection with the underlying credit card debt, the last four digits of the Debtor's account number, the last four digits of the Debtor's social security number, and the Debtor's address.

On that same date, eCAST, as assignee of GE Money Bank/BELK, also filed a proof of claim in the amount of $843.90 and attached a single page summary (the "Belk Proof of Claim"). The Belk Proof of Claim is shown on the claim register as claim no. 15. The summary page provides information similar to the information provided in the attachment to the Dillard Proof of Claim.

On February 27, 2007, Trawick H. Stubbs (the "Chapter 13 Trustee") filed the Minutes of 341 Meeting and Motion for Confirmation of Plan (the "Plan"). The Plan provides for a one hundred percent payout (100%) to unsecured creditors in the amount of $81,954.64 which includes full payment of the Bank of America Proof of Claim, the Dillard Proof of Claim, and the Belk Proof of Claim. On March 26, 2007, the Court entered an Order confirming the Chapter 13 Plan.

On September 18, 2008, approximately eighteen months after the Plan was confirmed, the Debtor filed the Claim 4 Objection objecting to Bank of America Proof of Claim on the basis that the proof of claim failed to meet the technical requirements of Fed. R. Bankr. P. 3001 and that the Bank of America Proof of Claim was not allowable under 11 U.S.C. § 502(b)(1). Subsequently, on September 24, 2008, the Debtor filed her objection to claim nos. 10 and 15 with respect to the Dillards Proof of Claim and the Belk Proof of Claim and asserted the same deficiency arguments. The Debtor requested that the Court disallow all three claims in their entirety.

On October 21, 2008, eCAST filed its Response of eCAST Settlement Corporation to Debtor's Objections to Claims Numbers 4, 10, and 15 and Request for a Hearing (the "Response"). eCAST asserts that it provided supplemental documentation to counsel for the debtor on September 30, 2008 with respect to the Dillards Proof of Claim and the Belk Proof of Claim. eCAST alleges that it did not receive the request for additional documentation in connection with the Bank of America Proof of Claim until three days prior to the scheduled hearing. eCAST claims that the Debtor failed to properly serve the request on it. eCAST asserts the Debtor's admissions in her schedules combined with the summaries attached to each of the proofs of claim satisfy the requirements of FED. R. BANKR. PRO. 3001. And, because eCAST has satisfied Rule 3001, it has established that the claims are prima facie valid.

3

Two days later, on October 23, 2008, eCAST amended the Bank of America Proof of Claim, the Dillards Proof of Claim, and the Belk Proof of Claim.[1] With respect to the Bank of America Proof of Claim, eCAST filed a copy of the June 2006 billing statement and a copy of the Bill of Sale between Bank of America, N.A. and eCAST. The June 2006 billing statement shows the amount due as of May 21, 2006 as $6,692.49 with charges made, interest accrued, and fees incurred from April 24, 2006 to May 21, 2006.

As to the Dillards Proof of Claim, eCAST attached six (6) monthly statements from January 19, 2006 through June 19, 2006 and a copy of the Bill of Sale from Monogram Credit Card Bank of Georgia, Montgomery Ward Credit Corporation, GE Capital Finance, Inc., and General Electric Capital Corporation to eCAST.

Lastly, the Belk Proof of Claim was amended to include five (5) monthly statements from January 22, 2006 through June 25, 2006 and a copy of the Bill of Sale from Monogram Credit Card Bank of Georgia, Montgomery Ward Credit Corporation, GE Capital Finance, Inc., and General Electric Capital Corporation to eCAST.

Prior to the hearing on this matter, eCAST supplemented its Response and filed a Memorandum of Law in Support of Response of eCAST Settlement Corporation to Debtor's Objections to Claim Numbers 4, 10, and 15 on February 2, 2009.

---

[1] The attachments to the amended proofs of claim were also attached to eCAST's Response.

4

**DISCUSSION**

Section 502 of the Bankruptcy Code addresses the allowance of claims. More specifically, section 502(a) provides that when a creditor files a proof of claim, it is deemed allowed unless the debtor objects.

Section 502(b) provides that subject to certain limitations, after notice and a hearing, the court shall determine the amount and allow such claim except to the extent that the claim falls into one of the nine enumerated exceptions. Most notably, section 502(b)(1) limits a court's ability to allow a claim if such claim is not enforceable against the debtor or property of the debtor "under an agreement or state law for a reason other than because such claim is contingent or unmatured..."

Section 502 offers a statutory basis for the allowance of claims; however, FED. R. BANKR. PRO. 3001 sets forth the specific requirements a creditor must satisfy when filing a proof of claim. Rule 3001(a) defines a proof of claim as a "written statement setting forth a creditor's claim" and (c) states that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Subsection (f) of Rule 3001 establishes that proofs of claim which are filed and executed in accordance with the rules constitute *prima facie* evidence of the validity and the amount of the claim.

In this case, the underlying obligation of each of the claims at issue is credit card debt. The Debtor asserts that eCAST failed to satisfy the requirements of FED. R. BANKR. PRO. 3001

when it neglected to provide the writing on which the credit card claims were based or an explanation as to circumstances of which that writing was lost or destroyed.  In its initial proofs of claim, eCAST only provided a summary as to the amount due on the account.  The summary did not describe whether or not the underlying writing was available or the circumstances surrounding its unavailability.  Therefore, based on this technical deficiency and eCAST's failure to comply with the Rules, the Debtor argued that the claims should be disallowed in their entirety.

In considering Rule 3001(f), the Court disagrees with the Debtor's position.  As recently recognized by Judge Small in *In re Andrews,* "[m]any courts have weighed in on the ramifications of a creditor's failure to comply with Rule 3001(c). . . [and the] majority view is that the failure to attach documents required by Rule 3001 and Official Form 10 is not, by itself, a basis for disallowance. . ." *In re Andrews*, 394 B.R. 384, 388 (Bankr. E.D.N.C. 2008) (quoting 9 Collier on Bankruptcy ¶ 3001.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007). See also *In re Herron,* 381 B.R. 184, 189-190 (Bankr. D. Md. 2008)(determining that a creditor's use of a summary as supporting documentation may be sufficient to establish a prima facie claim under Rule 3001(f)); *In re Simms*, 2007 WL 4468682 at *2 (Bankr. N.D. W. Va. 2007) (holding that the lack of documentation is not a basis for disallowance of a claim).

Consequently, the Court declines to disallow the initial Bank of America Proof of Claim, Dilliards Proof of Claim, and Belk Proof of Claim based solely on the fact that eCAST only included a summary with its proofs of claim.  However, this finding does not mean that the claims satisfy Rule 3001. As the *Andrews'* court recognizes, the appropriate remedy for when a creditor fails to attach sufficient documentation is that these claims are not considered

*presumptively valid* under Rule 3001(f). *Andrews*, 384 B.R. at 388. Since the claims are not presumptively valid, a debtor does not have to meet an evidentiary burden in its objection; a debtor need only to object. *In re Gilbreath*, 395 B.R. 356, 364 (S.D. Tx. 2008). By doing so, the Debtor shifts the burden back to eCAST to prove the validity of its claim by a preponderance of the evidence and in accordance with state law. *Id.*

The disallowance of a claim under state law is one of the statutory exceptions under 11 U.S.C. 502(b)(1) that allows for a claim to be disallowed. The Debtor makes a blanket statement that eCAST would be unable to provide evidence of its claims sufficient under North Carolina Rules of Evidence[2] and asserts that eCAST has failed to meet its evidentiary burden by not providing an original or duplicate copy of the credit card agreement for each of its claims. Relying on N.C.G.S. § 8C, Article 10, Rules 1002 and 1003, the Debtor contends that the original or a duplicate copy of the initial credit card agreement is required to establish collection action on a credit card debt under North Carolina law. The Debtor recognizes that N.C.G.S. § 8C, Article 10, Rules 1004 allows that the contents of a writing may be proved by other competent evidence. However, the Debtor contends that the initial summaries filed by eCAST's failure to provide any of the terms of the credit card agreement, including the interest rate charged, payment due date, or default terms.

---

[2]Based on the Objection, the Court infers that the Debtor believes that eCAST should have provided the original or copy of the original credit agreements in support of its claims. Federal regulations only mandate that a credit card issuer keep its credit card applications on file for two years. *12 C.F.R. § 226.25,* "Truth in Lending," Regulation Z. See also *Schade v. MBNA America Bank, N.A.*, 2006 U.S. Dist. LEXIS 5553 (W.D.N.C. 2006). Given that there is a three year statute of limitation for the collection of debts and contract actions in North Carolina, it is impossible that the only document(s) that would be sufficient to prove such an action is an original or copy of a credit card agreement.

The Debtor fails to recognize the account stated cause of action allowed in North Carolina. An account stated is an agreement between the parties that a balance is correct after reasonable examination by the party to be charged. *Strong's North Carolina Index*, 1 N.C. Index 4th Accounts and Accounts Stated § 4 (May 2009). In order to establish an account stated, the creditor must provide:

> (1) a calculation of the balance due;
> (2) submission of a statement to the party to be charged;
> (3) acknowledgment of the correctness of the statement by the party; and
> (4) promise, expressed or implied, by the party to be charged to pay the balance due.

*Id.*

The Supreme Court of North Carolina has held that an account can become an account stated by the admission of its correctness or by receipt of the statement and failure to deny liability within a reasonable amount of time. *Nello L. Teer Co. v. Dickerson, Inc.*, 257 N.C. 522, 530 (N.C. 1962). In this case, the monthly statements provide a calculation of the balance due, a summary of the charges, and a listing of any additional transactions and each of the statements was mailed to the Debtor. The mailing address on her petition is the same as the mailing address shown on each of the billing statements provided by eCAST. The Debtor has not disputed that she received the statements prior to the filing of her petition.

The Court finds that the Debtor had ample opportunity to object to the monthly statements or the amounts due thereunder. However, instead of objecting, the Debtor, in fact, listed each of the claims in her schedules in an amount due that is consistent with the monthly

billing statements.[3]  Subsequently, the three proofs of claim were timely filed in the bankruptcy case.  Again, the Debtor failed to object to the amounts due prior to the confirmation of her Plan.  Instead, the Debtor chose to wait more than eighteen months after her plan was confirmed and payments were being made to these creditors before objecting to the allowance of these claims.  Even now, the Debtor has not disputed the amount of the claims or asserted that she was wrongly charged for goods or services.  Furthermore, the Debtor has not amended her schedules to reflect that she disputes the validity of these claims.

Therefore, even though the debtor did not expressly promise to pay the amount due on each monthly statement, under the North Carolina's Supreme Court's holding in *Teer*, the Court finds she had reasonable time to object to the account statements and failed to do so.  As such, she impliedly assented to the amounts due and her obligation to pay resulting in a viable account stated claim by eCAST under state law.

The evidence provided by eCAST in response to the Objection establishes that the statements were in fact mailed to the Debtor and that her acquiescence could not be overlooked.  Production of the statements and the assignment agreement establishes eCAST as the holder of the claim satisfies its evidentiary burden and establishes the validity of its claims by a preponderance of the evidence.  In addition, the Debtor has not offered any evidence to rebut the evidence submitted by eCAST.  Therefore, the Court finds that the Bank of America Claim, the

---

[3] The amount listed on the Debtor's Schedule F is equal to the amount shown on the Bank of America Proof of Claim.  With respect to the Belk Proof of Claim and Dillards Proof of Claim, the Debtor made purchases, accrued interest, or incurred additional fees during the month of June 2006.  The amount listed by the Debtor in her schedules for these creditors is the amount shown on the May 2006 billing statements.

Dillards Claim, and the Belk Claim shall be **ALLOWED** in the amounts as filed. The Objection to Claim No. 4 and the Objection to Claims No. 10 and 15 are **OVERRULED**.

    **SO ORDERED**.

**END OF DOCUMENT**